UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE  DIVISION

| | |
|---|---|
| ESTATE OF JOSIE A. WILLIAMS, *Deceased,* )<br>*Robert L. Williams, personal Representative,* )<br>) | |
| Plaintiff, ) | 3:06-CV-48-SEB-WGH |
| ) | |
| vs. ) | |
| ) | |
| SOUTHERN INDIANA GAS AND ) | |
| ELECTRIC COMPANY, INC., d/b/a ) | |
| VECTREN ENERGY DELIVERY OF ) | |
| INDIANA, INC., IOWA PIPELINE ) | |
| ASSOCIATES, INC., *formerly known as KLP* ) | |
| *Construction Company, Inc.*, ENSTRUCTURE ) | |
| CORPORATION *n/k/a Semco construction* ) | |
| *Parent Company,* SEMCO ENERGY, INC., ) | |
| ) | |
| Defendants ) | |
| —————————————————————) | |
| ) | |
| SOUTHERN INDIANA GAS & ELECTRIC ) | |
| COMPANY, INC., *d/b/a Vectren Energy* ) | |
| *Delivery of Indiana, Inc.,* ) | |
| ) | |
| Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| IOWA PIPELINE ASSOCIATES, INFRA ) | |
| SOURCE UNDERGROUND ) | |
| CONSTRUCTION, LLC, SEMCO ) | |
| CONSTRUCTION PARENT COMPANY, ) | |
| SEMCO IOWA CONSTRUCTION ) | |
| COMPANY, ) | |
| ) | |
| Third Party Defendants, ) | |
| —————————————————————) | |
| ) | |
| ) | |
| SOUTHERN INDIANA GAS & ELECTRIC ) | |
| COMPANY, INC. *d/b/a Vectren Energy* ) | |
| *Delivery of Indiana, Inc.* ) | |



```
                                          )
             Cross Claimant,              )
                                          )
       v.                                 )
                                          )
IOWA PIPELINE ASSOCIATES, INC.,           )
formerly known as KLP Construction Company, )
Inc., ENSTRUCTURE CORPORATION n/k/a       )
Semco Construction Parent Company, SEMCO  )
ENERGY, INC.,                             )
                                          )
             Cross Defendants.            )
                                          )
                                          )
```

## ENTRY ON CROSS CLAIM PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On April 3, 2004, a gas explosion occurred at the home of Daisy Hardy in Evansville, Indiana, killing Ms. Hardy and Josie Williams and injuring several others. This lawsuit has been brought by the Estate of Josie Williams ("Estate") seeking damages from the gas utility and a gas line contractor. The Estate settled its claims against the gas utility and other entities who were defendants in this case prior to its removal from state court, but not its claims against the gas line contractor. The gas utility is also claiming against the contractor through cross claims and third party claims. This entry addresses the motion for partial summary judgment filed by the utility as a cross claim plaintiff seeking indemnity based on the provisions of a construction contract.

Southern Indiana Gas and Electric Company, Inc., d/b/a Vectren Energy Delivery of Indiana, Inc. ("Vectren") is the Defendant gas utility and also the Cross Claim Plaintiff. Vectren seeks indemnity for liability to the Estate from a contractor it hired several years ago

2

when it undertook to update and improve its gas delivery lines.  That contractor was Iowa Pipeline Associates, Inc., f/k/a KLP Construction, Inc., which, through merger or purchase, now constitutes part of one or all of the following:  Infra Source Construction, LLC, Semco Energy, Inc, Semco Iowa Construction Company or Enstructure Corporation (henceforth, "Contractor").  Contractor is the last remaining   Defendant to resolve the claims against it by the Estate, steadfastly denying liability for the explosion or any obligation of indemnity to Vectren.

In our order of March 28, 2007, we chronicled the events which led to the explosion and granted summary judgment to Contractor on the Estate's breach of contract claim. However, we denied summary judgment on Contractor's claim that its work was too remote to be a proximate cause of the explosion.  We also denied summary judgment in favor of Contractor on the Estate's negligence claim, noting that  material questions of fact remained which a jury must decide in resolving whether Contractor was at fault for the explosion.

In conjunction with an agreement entered into by Vectren and the City of Evansville, Natural Gas Odorizing, Inc. and American Water Systems, Inc., to settle and pay the claims of the Estate and four other identified claimants who are not a part of this lawsuit, Vectren sought indemnification by Contractor based on their contract and requested Contractor's participation in a negotiated settlement.  Contractor denied liability based on any required indemnification and refused to pay or otherwise participate in the negotiated settlement. Vectren now seeks summary judgment on the contractual indemnity claim, demanding payment by Contractor of the full amount Vectren was required to pay to settle all claims

3

against it, including those by the Estate. Vectren's contribution to the aggregate settlement was $1,950,000. We have not been made privy to the settlement amounts paid by each of the other three entities or the full amount paid out from the aggregate settlement pool to the Estate or the other four identified claimants.

### *The Indemnity Agreement*

Vectren and Contractor entered into a construction contract in April of 2001 covering work to be performed on Vectren's natural gas distribution system in Evansville, Indiana. Part of the contract required Contractor to install new plastic gas mains and service lines which were to be inserted into old metal lines which were being abandoned. The contract included removal of the stop boxes which operated in conjunction with the old metal lines, but were made obsolete by the new plastic lines. The stop boxes provided access to the shut-off valves for the old metal gas lines. After the plastic lines were installed inside the old metal lines, any attempt to operate the old shut-off valves threatened to damage the new plastic lines and lead to a gas leak.

In the opinion of the fire department investigator who conducted an investigation following the explosion, a gas leak was caused by the turning of a shut-off valve located within a stop box which had not been removed during the gas piping upgrade. Gas from this leak infiltrated Ms. Hardy's home and led to the explosion. The stop box had been opened and the valve turned by a water department employee who mistakenly thought the valve he manipulated was a water shut-off valve. Almost immediately after discovering this error, the water department notified the gas company, which repaired the gas leak. However, by the

4

time the error was discovered and the repair made, enough gas had leached through the ground and into Ms. Hardy's basement that the attempt by a gas company employee to relight the furnace pilot light in the home resulted in the devastating explosion.

The construction contract between Vectren and Contractor contains the following indemnity provision (emphasis in original text):

> The Contractor shall be solely responsible for and shall exercise due care and shall exercise all appropriate safety precautions necessary or advisable for the prevention of accidents, and shall comply with all laws, rules, and regulations applicable to the work to be performed hereunder, to avoid damage, loss or injury of any and all kinds or nature whatever to persons and property. THE CONTRACTOR AGREES TO INDEMNIFY, DEFEND, AND HOLD HARMLESS OWNER AND ITS AGENTS AND EMPLOYEES from any claims, demands or liability of any kind or nature for injuries or damages to any person or property growing out of the performance of this Contract or arising in any manner, ways or means from any product supplied or activity required by this Contract, WHETHER DUE IN WHOLE OR IN PART TO THE NEGLIGENCE OF OWNER, ITS AGENTS OR EMPLOYEES OR THE CONTRACTOR, ITS AGENTS OR EMPLOYEES OR OTHER PERSONS OR ENTITIES ENGAGED IN THE PERFORMANCE OF THE CONTRACT, OR THE JOINT NEGLIGENCE OF ANY OF THE AFORESAID IN COMBINATION.

Vectren does not contend that it is entitled to indemnity if it is determined to be the sole negligent party, acknowledging that Ind. Code 26-2-5-1 declares indemnity agreements in construction contracts which purport to indemnify a party against that party's sole negligence against public policy and therefore void and unenforceable.[1]  Vectren concedes

---

[1] **Ind. Code § 26-2-5-1**
All provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction or design contract except those pertaining to highway contracts, which purport to indemnify the promisee against liability for:
(1) Death or bodily injury to persons;
(2) Injury to property;

that, insofar as the indemnity language addresses indemnification for damages due in "whole" to its own negligence, such a provision is unenforceable.  However, if Contrator is found to have been at fault in even the smallest of percentages,  it must fully indemnify Vectren.

Contractor asserts several  reasons why it is not required to indemnify Vectren.  First, the indemnity provision is completely void and unenforceable, pursuant to Ind. Code § 26-2-5-1.  In addition, the indemnity provision is ambiguous and should not be read so broadly as to require Contractor to indemnify Vectren for damages resulting from actions which were taken long after the completion of the contract and subsequent to the intervening negligent actions of others.  Finally, Contractor strenuously argues that the amount of the settlement that Vectren  reached with the Estate is so unreasonable that, even if the indemnity provision were to apply, it should not be required to subsidize Vectren's irrational decision to settle for such an extravagant amount.

## *Discussion*

All parties agree that Indiana law applies to this case.  The prohibitions contained in Ind. Code § 26-2-5-1 represent an exception to the general rule in Indiana that a party is free to contract to indemnify another for his own negligence, so long as that otherwise generally

─────────────────

(3) Design defects; or
(4) Any other loss, damage or expense arising under either (1), (2) or (3);
from the sole negligence or willful misconduct of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to the promisee, are against public policy and are void and unenforceable.

disfavored proposition is knowingly and willingly made and expressed unequivocally in the

agreement between the parties. *Sequa Coatings Corp. v. Northern Indiana Commuter*

*Transp. Dist.,* 796 N.E.2d 1216, 1223 (Ind. App. 2003). As explained by the Indiana Court

of Appeals in a case involving an indemnity provision in a construction contract:

> The concern with the language of an indemnity clause in this area is that it not
> only define the area of application, that is, negligence, but also define the
> cause of the damages in terms of physical or legal responsibility, that is, to
> whom the clause applies. For this reason, the language of the indemnification
> clause must reflect the indemnitor's knowing and willing acceptance of the
> burden and must express the burden in clear and unequivocal terms.
>
> For example, if a clause simply states that a subcontractor shall indemnify a
> general contractor for any negligence which arises from the job, it is sufficient
> to show that the clause applies to negligence but insufficient to inform the
> subcontractor that it must indemnify the general contractor for acts of the
> general contractor's own negligence. The claim of negligence which arises
> from the job could have been caused by the negligence of the general
> contractor, the subcontractor, third persons, or a combination of them. This is
> the very reason the indemnity for the indemnitee's own negligence must be
> specifically, not generally, prescribed.

*Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols*, 583 N.E.2d 142, 145 (Ind. App.

1991)(citations omitted).

Vectren contends that in all respects the indemnity clause at issue in this case is clear

as to its area of application, negligence, and the source of the conduct for which the

indemnitee receives protection, to wit, Vectren, its agents or anyone performing under the

contract. Further, with respect to the statutory prohibition against protection for its own

negligence in construction contracts, Vectren argues that, under Indiana law, a court should

avoid "throwing the baby out with the bath water" by vitiating the entire contract when,

instead, the portion that violates the statute or  public policy can be severed from the agreement, leaving the remainder of the contractual terms enforceable, assuming they continue to reflect the intentions of the parties and the purpose of the contract.  *See Harbour v. Arelco, Inc.,* 678 N.E.2d 381, 385 (Ind. 1997); *George S. May Intern. Co. v. King,* 629 N.E.2d 257, 263 (Ind. App. 1994); *Brokaw v. Brokaw*, 398 N.E.2d 1385, 1388 (Ind. App. 1980).

By excising that part of the contract which is contrary to law, while still enforcing as much of the remainder as is consistent with the parties' intent, Contractor would be required to indemnify Vectren but only if both Vectren and Contractor were found to have acted negligently.  Vectren cites as authority for this approach the decisions in *Moore Heating* as well as *Progressive Construction and Engineering Co., Inc. v. Indiana and Michigan Elec. Co. Inc.,* 533 N.E.2d 1279 (Ind. App. 1989), though Contractor accurately points out in response that, in each of those cases, the indemnity provisions in the contracts had qualifying language not included in the contract before us.

In *Moore Heating*, following a provision creating a broad indemnity clause which obligated the subcontractor to indemnify the general contractor for the general contractor's own negligence, regardless of whether the subcontractor could be held responsible as well, the contract also provided that:

> It is the intent of the parties that [Moore] shall indemnify [Huber] under [this indemnification clause and the insurance clause] to the fullest extent permitted by law, however, [Moore] may not be obligated to indemnify [Huber] for the sole negligence or willful misconduct where such indemnification is contrary to law ....

8

*Moore Heating*, 583 N.E.2d at 144.  Similarly, the contract in *Progressive Construction* included a broad indemnity guarantee according to which the general contractor indemnified the owner for the owner's own negligence that was followed by an exception if such indemnity were "found to be contrary to law."  *Progressive Construction,* 533 N.E.2d at 1284.  In the case at bar, because there is no "contrary to law" exception to the indemnity provision, Contractor contends that the entire provision violates Ind. Code § 26-2-5-1.

We acknowledge the obvious difference between the contractual language in *Moore Heating* and *Progressive Construction* compared to the contract before us here, but that distinction does not dispose of the issue before us.  The courts deciding *Moore Heating* and *Progressive Construction* noted the "contrary to law" exceptions to the broad indemnity clauses at issue in deciding whether Ind. Code § 26-2-5-1 rendered them unenforceable. *Moore Heating*, 583 N.E.2d at 148; *Progressive Construction,* 533 N.E.2d at 1286.  However, in neither case did the Court's ruling turn on the "contrary to law" provision or finding.  In fact, in *Moore Heating*, having examined the subcontractor's argument in light of Ind. Code § 26-2-5-1, the Court concluded:

> The legislature has apparently decided that it would be unfair to allow indemnification where no one other than the promisee, here Huber, has been negligent in the matter.  This is the prerogative of the legislature.  To read the statute to prohibit all agreements where a promisee may be indemnified for damages caused in part by its own negligence would read the word "sole" out of the statute.  However, the legislature carefully considers the words it includes in the statutes and we will not read the statute to exclude the word "sole" when it is, in fact, included.

*Moore Heating*, 583 N.E.2d at 148.

9

In the contract before us, it is clear that Contractor and Vectren intended to provide Vectren with broad protection "from any claims, demands or liability of any kind or nature for injuries or damages to any person or property growing out of the performance of this Contract or arising in any manner, ways or means from any product supplied or activity required by this Contract." In addition, in equally clear and unequivocal terms, in fact, as set forth utilizing capital letters, Contractor agreed to provide protection to Vectren, as the owner, regardless of whether the claim was "DUE IN WHOLE OR IN PART TO THE NEGLIGENCE OF OWNER." If the two words "IN WHOLE" are read out of the contract as contrary to law, the remainder not only complies with the statute, but it is consistent with the parties' original intent. The inclusion of the word "or" in the contract permits, perhaps requires, this interpretation, and brings the agreement into conformity with Indiana law in a fashion that we believe Indiana's Supreme Court would agree with and enforce. "[I]f a contract contains an illegal provision which can be eliminated without frustrating the basic purpose of the contract, the court will enforce the remainder of the contract." *Harbour v. Arelco, Inc.,* 678 N.E.2d 381, 385 (Ind. 1997); *see also,* 8 Richard A. Lord, *Williston on Contracts* § 19.69 (4th ed. 1998). Accordingly, we hold that Ind. Code § 26-2-5-1 does not void the indemnity clause as so interpreted and as it pertains to indemnifying Vectren for its partial negligence.

**Ambiguity**

In its brief, Contractor argues: "It is not clear from the face of the contract that

10

Vectren and Iowa Pipeline intended that Iowa Pipeline would indemnify Vectren when negligence had not been established by the court or admitted by the parties." To us, what actually is not clear is what is meant by this argument. Contractor represents that it was not its negligence in failing to remove the stop boxes that caused the explosion and resultant fatalities, because the negligent actions of others during the intervening years caused the explosion. Further, according to Contractor, having disputed any application of the indemnity agreement, the intent of the parties in entering into that agreement is now a material question of fact, foreclosing summary judgment.

As previously indicated, we find Contractor's argument in this respect to be confusing at best. To the extent Contractor seeks reconsideration of our earlier ruling denying its summary judgment motion, which ruling was premised on the actions of others which were an intervening and superceding cause, we refuse to alter our prior decision. However, if Contractor contends that it can unilaterally create a question of fact by simply representing that it did not intend for the indemnity agreement to apply to the situation presented here, it has seriously overestimated its power. "A contract is not ambiguous merely because the parties offer different interpretations of the contract terms." *Powell v. American Health Fitness Center of Fort Wayne, Inc.*, 694 N.E.2d 757, 760 (Ind. App. 1998); *see also, Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001). Under Indiana law, a contract is ambiguous only if reasonable persons could disagree about its interpretation; and, even then, if the ambiguity arises out of the language used in the contract, its interpretation

11

remains a question of law for a court, not a jury, to decide.  *Allen*, 236 F.3d at 381.

Farther along in its brief, Contractor raises what seems to us to be a more persuasive ambiguity argument, arguing that the indemnity clause was in effect only during the period of time which the Contractor was performing the work.  Contractor maintains that it did not agree to indemnify Vectren "for eternity."  When Vectren accepted the work and made final payment to Contractor, the indemnification provision expired by its own terms.  In support of this contention, Contractor cites the use of the present tense in the indemnity provision and points to other contract provisions which were also in effect  only until such time as the project was finished and accepted.

In further support of this argument, Contractor cites the holding in *Public Service Co. of Indiana v. Miller Construction Co., Inc.,* 535 N.E.2d 573 (Ind. App.  1989), where an indemnity clause in a power line construction contract provided that the construction company indemnified the owner "from any liability ... caused by, incidental to, or arising out of, the doing of any work ... covered by this agreement."  *Id*. at 574.  Property belonging to a third party was damaged several years after the completion of the work when a power line which had been installed by the construction company fell to the ground.  *Id*.  The owner sought both a defense from and indemnity by the construction company after having been sued by the third party.  However, the Indiana Court of Appeals ruled that the contract could not properly be read to require indemnity seven years after the work had been completed.  *Id*. at 575.   "[T]he doing of any work," according to the Court of Appeals, referenced the

12

time during which the construction company was performing work under the contract, which was the period of indemnification of the owner, but "[a]s soon as the job was done and accepted by PSI, the indemnification clause expired." *Id*.

In the case at bar, the contractual indemnity language is not restricted to the time of "doing of any work," as in *Miller Construction*. Rather, the Contractor agreed to indemnify Vectren "for injuries or damages ... growing out of the performance of the Contract or arising in any manner, ways or means from any product supplied or activity required by this Contract." The words, "growing out of the performance of the Contract," are clearly broader in scope than "the doing of any work." The term "grows" connotes a starting point, and, in this case, the starting point is when the work commenced. Further, there is no question that the removal of the stop boxes was an "activity required" by the express terms of the contract.[2] If the parties had intended to limit the scope of time during which the indemnity obligation was in force and effect, they could have done so, as they did with the guarantee provisions in the contract.

Despite the extended coverage of the indemnity provision compared to that in *Miller Construction*, we are not persuaded by Vectren's overly-simplistic assertion that Contractor's

_____

[2]Contractor maintains that it was told by a Vectren representative that it did not have to remove any stop boxes which it could not readily locate by means of a visual search. Contractor is free to present evidence of such a contract modification at trial, if the terms of the contract allow for such a modification. If Vectren contests the claim of a modification, the jury will decide. Obviously, if Vectren was no longer contractually required to remove stop boxes, the explosion could not have grown out of its performance of the contract.

indemnity obligation is contingent upon a jury's determination of fault with respect to the underlying third-party claim.  Plaintiff's claim against Vectren was resolved through settlement.  Vectren's entitlement to indemnity must be determined according to the terms of its contract with Contractor.  Before a jury makes its assessment as to fault for the explosion, it must decide causation, which determination will effect whether Vectren is entitled to indemnity under its agreement with Contractor.

Whether the indemnity claim is tried separately or in conjunction with the Estate's remaining claim against Contractor, the jury will determine whether the explosion resulted from performance of the construction contract or occurred based on an activity required to be performed by the contract.  Obviously, these are contested factual issues which cannot be resolved short of trial, as was also true regarding the proximate cause determination addressed in our entry resolving Contractor's motion for summary judgment.  If the jury decides that the explosion did not grow out of the performance of the construction contract or arise from an activity required by the contract, Vectren's indemnity claim is defeated.  On the other hand, if the jury concludes that the explosion did grow out of the performance of the construction contract or arise from an activity required by the contract then the jury would be tasked with deciding whether both Vectren and Contractor were at fault for the explosion.  The jury's role awaits another day.

**Excessive Settlement Amounts**

Contractor's final argument in support of its refusal to indemnify Vectren relates to the allegedly excessive amount of the settlements agreed to by the gas company with the various claimants. Vectren rejoins that Contractor is equitably estopped from challenging the reasonableness of the settlements entered into by Vectren and, in any event, the settlements were reasonable.

"An indemnitor who denies liability on an indemnity contract thereby confers on the indemnitee the right to exercise reasonable judgment in settling the case without further consultation with the indemnitor." *Sink & Edwards, Inc. V. Huber, Hunt & Nichols, Inc.,* 458 N.E.2d 291, 297 (Ind. App. 1984). However, as recognized by the Court of Appeals of Indiana:

> The law regarding indemnity contracts has evolved such that indemnitors have a leverage position if they choose not to honor an indemnification agreement. Even if the indemnity clause is found valid, indemnitors gain a "second bite at the apple" by placing the burden upon the indemnitee to prove that the indemnity amount is "reasonable."

*Bethlehem Steel Corp. v. Sercon Corp.,* 654 N.E.2d 1163, 1168 (Ind.App. 1995). Obviously, Contractor, in making its argument that the settlements made by Vectren were for an unreasonable amount, is attempting to get that "second bite at the apple."

We repeat for emphasis that Indiana substantive law controls in this diversity jurisdiction case. *Goetzke v. Ferro Corp.,* 280 F.3d 766, 773 (7th Cir. 2002). In *Sink & Edwards, supra,* the indemnitor denied liability under an indemnity contract and the

indemnitee proceeded to settle the third party claim, after which it pursued the indemnitor for payment of the settlement amount.  The indemnitor maintained that the settlement was a voluntary payment. *Sink & Edwards*, 458 N.E.2d at 297.  The Indiana Court of Appeals disagreed with that characterization, announcing the rule that the indemnitor confers upon the indemnitee the right to settle reasonably with a third party when it denies liability under the indemnity agreement. *Id.*  Nonetheless, the appellate court remanded the matter to the trial court for a determination of whether the settlement was reasonable, commenting in a footnote that the issue of reasonableness was a "judicial determination." *Id.* at 297 n.3.

The rule in *Sink & Edwards,* that the settlement amount paid by the indemnitee must be reasonable in order for the indemnitor to subsequently be held to its contractual obligation, has been applied thereafter by Indiana appellate courts in other cases. *See Bethlehem Steel Corp. v. Sercon Corp.*, 654 N.E.2d at 1168; *Sequa Coatings, Corp. v. Northern Indiana Commuter Transportation District,* 796 N.E.2d 1216, 1230 (Ind. App. 2003).  Vectren cites the *Sequa Coatings* decision as support for its contention that Contractor, as indemnitor, is estopped from challenging the reasonableness of the settlement amounts after it refused to participate in the settlement when given that chance.  However, it is clear that the circumstances in *Sequa Coatings* were significantly different than those pertaining here.  In *Sequa Coatings,* the indemnitor ignored the written requests from the indemnitee for indemnification and for a defense, and thus was held to have acquiesced in the settlement. *Sequa Coatings*, 796 N.E.2d at 1230.  Here, Contractor notified Vectren almost immediately

16

that it (through its insurer) was denying the indemnity claim on the grounds that it was not negligent.  Further, Contractor attended the mediation session(s) out of which came the settlement of all the third party claims against Vectren as well as those against Contractor, with the exception of the claim by Plaintiff.  When, as here, the law imposes a reasonableness requirement on an indemnitee settling a third party claim, it would be particularly unjust if, at the same time, it imputed a waiver of that required reasonableness on the indemnitor who has clearly and consistently alerted the indemnitee that it is challenging its indemnity obligation under the contract.

Because Vectren's entitlement to indemnity remains unresolved, it is premature for us to undertake an analysis of the reasonableness of the settlement amounts, as both parties have invited us to do.  The Court in *Sink & Edwards* ruled that, along with determining whether equitable estoppel principles apply, under Indiana law the court must make the final decision as to whether an indemnitee's settlements with a third party are reasonable.  *Id.* at 297 n.3.  We are prepared to make that determination without delay following the jury verdict on the underlying issues.  Vectren's submission of an affidavit as well as Contractor's tendered research regarding the issue of reasonableness will remain on file to facilitate our review, should we be called upon to resolve this matter.

**Attorneys Fees & Prejudgment Interest**

In its partial summary judgment motion, Vectren has requested that, should indemnity

17

apply, the Court enter an award of attorneys fees to cover both the defense of the third party

claims and the prosecution of its crossclaim for indemnity against Contractor.   As my

brother judge, Larry J. McKinney, noted in a recent decision handed down by him in *RLI*

*Insurance Co. v. Conseco, Inc.,* 2007 WL 2020176, a split in interpretations of Indiana case

law exists regarding whether an exception to the well established "American Rule" regarding

attorneys fees applies to an action in which an indemnitee pursues an indemnitor for

reimbursement of the costs of defending or otherwise resolving a third party claim.  Chief

Judge McKinney opined that, in his view, the Indiana Supreme Court would most likely

adopt the holding in *Dale Bland Trucking, Inc. v. Kiger,* 598 N.E.2d 1103, 1105 (Ind. App.

1992), to wit, that attorneys fees generated in connection with prosecuting an indemnity

claim (as opposed to fees incurred in defending the original third party action)[3] would not be

recoverable where the indemnity provision did not expressly provide for such an award.

Distinguishing the holdings in *Fort Wayne Lodge, LLC v. EBH Corp*., 805 N.E.2d 876, 887

(Ind.Ct.App.2004) and *Bethlehem Steel Corp. v. Sercon Corp.*, 654 N.E.2d 1163, 1168

(Ind.Ct.App.1995), which suggest a contrary result based on dicta in the older Indiana Court

of Appeals decision, *Zebrowski & Assocs., Inc. v. City of Indianapolis* , 457 N.E.2d 259, 264

(Ind.Ct.App.1983), Chief Judge McKinney stated that in his judgment the Indiana Supreme

Court would not likely apply those precedents.

---

[3]Apparently Contractor is not contending that, should it be held liable for indemnifying and defending Vectren against the third party claims, it would not be liable for reasonable attorneys fees Vectren incurred in defending those claims.  Clearly, it would be liable for such fees.

We state the obvious in noting that the rulings by federal district courts are not binding in other cases or on other district court judges, even within the same district.  *TMF Tool Co., Inc. v. Muller*, 913 F.2d 1185, 1191 (7th Cir. 1990);  *U.S. v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987).  Nevertheless, we regard Chief Judge McKinney's opinion to be well-reasoned and persuasive, not only with regard to the issue of attorneys fees, but also with regard to the indemnitee's entitlement to prejudgment interest, which addresses an additional request made by Vectren.  In a footnote to his opinion in *RLI Insurance*, Chief Judge McKinney wrote that, since it was likely that the amount of costs and fees incurred in defending the claims for which indemnity was being sought would be disputed, and an award of prejudgment interest in a breach of contract case is proper only where no exercise of judgment is necessary to assess the amount of damages, he would reserve judgment at the summary judgment stage on the claim for prejudgment interest.  *RLI Insurance Co. v. Conseco, Inc.,* 2007 WL 2020176, *8 n.2 (citing *J.S. Sweet Co., Inc. v. White County Bridge Com'n*, 714 N.E.2d 219, 225 (Ind. App. 1999).  The circumstances faced by the Court in the case at bar with regard to a fee challenge are very similar to those in *RLI Insurance*

*Co.*; therefore, having denied Vectren's motion for partial summary judgment, we reserve a ruling on Vectren's entitlement to attorneys fees and/or prejudgment interest.

### Conclusion

19

For the reasons discussed in this entry, Vectren's Motion for Partial Summary Judgment (Doc. #81) is **DENIED.**

**IT IS SO ORDERED.**

Date: _03/07/2008_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

20

**Copies to:**

Norman T. Funk
HILL FULWIDER MCDOWELL FUNK
& MATTHEWS
tom@hfmfm.com

Laura L. Pamplin
VECTREN CORPORATION
llpamplin@vectren.com

Kevin C. Schiferl
LOCKE REYNOLDS LLP
kschiferl@locke.com

Patrick A. Shoulders
ZIEMER   STAYMAN   WEITZEL   &
SHOULDERS
pshoulders@zsws.com

Robert L. Simpkins
robert@simpkinslaw.com

Emily Dawn Smith
HILL FULWIDER MCDOWELL FUNK
& MATTHEWS
emily@hfmfm.com

Keith W. Vonderahe
ZIEMER   STAYMAN   WEITZEL   &
SHOULDERS
kvonderahe@zsws.com